DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Evangeline Kasapis ("Ms. Kasapis") and Appellant High Point Furniture Co., Inc. ("High Point Furniture") appeal individually from the judgment of the Summit County Court of Common Pleas, Probate Division, which granted summary judgment in favor of Appellees. This Court affirms.
 I. {¶ 2} Gus A. Kasapis ("Decedent") died on October 12, 1999, survived by his wife, Ms. Kasapis, and three adult children, Anthony Kasapis, Athena Daniels, and Alexandria Kasapis. Approximately seven months later, Anthony Kasapis passed away and was survived by his two children, Anthony and Alexandria. However, Anthony was not married at any time to the mother of the children, Appellee Tracey Summers.
 {¶ 3} Through the probate of Decedent's will, Ms. Kasapis was appointed as the executrix of Decedent's estate. In addition, Summers was named as the guardian of the person and estate of Anthony Kasapis' two children. While administering Decedent's estate, Ms. Kasapis sought instructions from the trial court requesting clarification as to whether a business owned by Decedent, High Point Furniture Co., Inc., should be classified as tangible or intangible property. Ms. Kasapis sought the instructions due to Decedent's will which stated that she would receive all his tangible property and that his intangible property would pass to the Gus A. Kasapis Revocable Trust.[1]
 {¶ 4} Summers contested Ms. Kasapis' attempt to classify the property as tangible and distribute it to herself. As a result, Ms. Kasapis filed a complaint for declaratory judgment seeking a determination that High Point Furniture was tangible property. In addition, Ms. Kasapis asserted that Summers had violated the in terrorem clause of Decedent's will, thus forfeiting any interest her children had in the will. In addition to Summers, Ms. Kasapis' suit included High Point Furniture Co., Inc. and National City Bank, as Successor Trustee to the revocable trust. Summers cross-claimed against High Point Furniture, asking the court to order it to issue stock, naming the trust as owner of the corporation. In addition, High Point Furniture filed a cross-claim against Summers, seeking a determination regarding whether Summers' children were the lineal descendants of Decedent and thus capable of receiving benefits from the trust.
 {¶ 5} Following a lengthy discovery dispute, Summers moved for summary judgment, alleging that no material facts were in dispute. No party responded factually to Summers' motion. Rather, Ms. Kasapis asserted that Summers was no longer a party to the litigation because Ms. Kasapis had dismissed her claims against Summers earlier in the litigation. Ultimately, the trial court granted Summers' motion, found that High Point Furniture was a corporation, ordered High Point Furniture to issue stock to the trust, and recognized that in a different probate proceeding Summers' children had been found to be the children of Anthony Kasapis. Both High Point Furniture and Ms. Kasapis timely appealed.
 MS. KASAPIS' ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO 
SUMMERS AS SHE HAD NO STANDING TO FILE FOR SUMMARY JUDGMENT OR TO OTHERWISE FILE ANY PLEADING IN THE CASE AS RELATED TO [MS. KASAPIS]."
 {¶ 6} In her first assignment of error, Ms. Kasapis contends that the trial court erred when it permitted Summers to file a motion for summary judgment in her capacity as the guardian of Anthony and Alexandria Kasapis. This Court disagrees.
 {¶ 7} Ms. Kasapis first urges that her voluntary dismissal of her claims against Summers removed Summers from the litigation entirely. While Denham v. New Carlisle (1999),86 Ohio St.3d 594, makes clear that the claims against Summers could be dismissed pursuant to Civ.R. 41(A), Ms. Kasapis has offered no support for her argument that the claims made by Summers were no longer pending. Prior to the dismissal, Summers had filed a cross-claim against High Point Furniture and High Point Furniture had filed a cross-claim against Summers. At the time Summers moved for summary judgment, both of these claims remained pending. Accordingly, Ms. Kasapis' assertions that Summers was no longer a party to the litigation lack merit.
 {¶ 8} In addition, Ms. Kasapis argues that Summers lacks standing as guardian for the children because the children are not beneficiaries of the revocable trust. Specifically, Ms. Kasapis asserts that only lineal descendants of Decedent are beneficiaries of the trust and that Summers' children do not qualify. We disagree.
 {¶ 9} "[W]hen the language of the instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself." Domo v. McCarthy (1993), 66 Ohio St.3d 312,314. Absent ambiguity, "[a]ny words in the trust are presumed to be used according to their common, ordinary meaning." In reTrust of Brooke (1998), 82 Ohio St.3d 553, 557. Further, unless the terms of a trust are found to be ambiguous, no extrinsic evidence will be admitted to interpret the trust provisions. SeePNC Bank, N.A. v. Camping Edn. Found., PNC Bank (Mar. 31, 2000), 1st Dist. No. C-990690; Craft v. Shroyer (1947),81 Ohio App. 253, 258. Whether the language in a document is ambiguous is determined as a matter of law and that issue will be reviewed on appeal de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm (1995), 73 Ohio St.3d 107, 108.
 {¶ 10} "The term `lineal descendants,' taken at its ordinary meaning, is not ambiguous." Robinson v. Beck, 9th Dist. No. 21094, 2003-Ohio-1286, at ¶ 11. "Lineal descent" entails "[d]escent in a direct or straight line, as from father or grandfather to son or grandson." Black's Law Dictionary (7 Ed. 1999) 456. Through the probate of their father's will, it was established that Anthony Kasapis was the father of both of Summers' children. Accordingly, both of the children were established as Decedent's grandchildren and thus his lineal descendants.
 {¶ 11} Ms. Kasapis, however, urges that such a conclusion is faulty for numerous reasons. First, Ms. Kasapis alleges that the probate court that established paternity lacked jurisdiction to do so. Additionally, she argues that even a finding of paternity does not make the children Decedent's lineal descendants. We disagree with both of Ms. Kasapis' contentions.
 {¶ 12} R.C. 3111.381(B) provides as follows:
"If the alleged father of a child is deceased and proceedings for the probate of the estate of the alleged father have been or can be commenced, the court with jurisdiction over the probate proceedings shall retain jurisdiction to determine the existence or nonexistence of a parent and child relationship between the alleged father and any child without an administrative determination being requested from a child support enforcement agency."
Accordingly, Ms. Kasapis' assertions that paternity must be established prior to death are only appropriate under the descent and distribution statutes and are inapplicable under R.C. Chapter 3111, the Ohio Parentage Act. See Byrd v. Trennor,157 Ohio App.3d 358, 2004-Ohio-2736, at ¶ 28-30.
 {¶ 13} Further, while Appellant asserts that the probate court should not have applied R.C. 3111.381, we note that the dates surrounding the probate of Anthony Kasapis' estate are not in the record before this Court as his probate was a separate proceeding. On the face of its decision, the probate court in Anthony Kasapis' proceeding found that R.C. 3111.381 applied and utilized it to establish jurisdiction to determine paternity. By its plain language, R.C. 3111.381 applies to probate proceedings that "have been" commenced, as was the case for Anthony Kasapis. We also note that Ms. Kasapis was a party to that proceeding and chose not to appeal the trial court's determination of paternity. As such, this Court will not revisit the proper applicability of R.C. 3118.381 in this collateral proceeding.
 {¶ 14} In addition, Ms. Kasapis urges that even if paternity of the children is established, they are still illegitimate. We agree. However, the plain language of Decedent's will does not differentiate between legitimate and illegitimate lineal descendants. Contrast In re Dumaine (1991), 135 N.H. 103, 107
(designating trust beneficiaries as "legitimate issue or lineal descendants" and finding that legitimate served to modify both "issue" and "lineal descendants"). Further, this Court's determination that the term "lineal descendants" includes illegitimate children is bolstered by recent trends in Ohio law. See Brookbank v. Gray (1996), 74 Ohio St.3d 279, 286 (finding that for the purposes of Ohio's wrongful death statute, "children" include illegitimate children). While we recognize the distinction drawn by the Brookbank Court between the wrongful death statute and the descent and distribution statute, we note that the General Assembly has expanded the jurisdiction of the probate court to determine paternity. See R.C. 3111.381 (made effective Mar. 22, 2001). Accordingly, this Court is persuaded that the legislature intended to remove the stigma of illegitimacy and to facilitate the determination of paternity. Accordingly, absent any indication of Decedent's intent to the contrary, we decline to construe the term "lineal descendants" in a manner inconsistent with both its common meaning and the intent of the legislature.
 {¶ 15} R.C. 3111.13(A) provides that "[t]he judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." As the probate court during the administration of Anthony Kasapis' estate established that he was the father of Summers' children, such a ruling is determinative of the question of whether they are in the direct line of descent from Decedent. Accordingly, Ms. Kasapis' first assignment of error is overruled.
 MS. KASAPIS' ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE BUSINESS KNOWN AS HIGH POINT FURNITURE WAS INTANGIBLE PROPERTY RATHER THAN TANGIBLE PROPERTY."
 {¶ 16} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948.
 {¶ 17} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 18} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732,735.
 {¶ 19} In her motion for summary judgment, Summers asserted that High Point Furniture was a corporation and thus intangible property which passed to the trust Decedent had created. In support of her motion, Summers attached numerous tax returns, loan papers, and the affidavits of Decedent's accountant and certain bank personnel. Neither Ms. Kasapis nor High Point Furniture responded to the factual material set forth in Summers' motion for summary judgment.
 {¶ 20} On appeal, Ms. Kasapis for the first time seeks a determination that Decedent never properly placed assets including High Point Furniture into the trust. In the trial court, Ms. Kasapis did not contest the factors surrounding the creation of the trust. Accordingly, this Court will not consider her claims for the first time on appeal. We do note, however, that Ms. Kasapis' claim that Decedent never divested himself of an interest in High Point Furniture is misplaced. Decedent unequivocally transferred his intangible assets to the trustupon his death. Accordingly, the factors discussed by Ms. Kasapis relating to the placement of assets into inter vivostrusts are inapplicable.
 {¶ 21} Ms. Kasapis and High Point Furniture also seek a determination that High Point Furniture was in fact a proprietorship, not a corporation. In support of her claim, Summers provided the Articles of Incorporation which were filed for High Point Furniture in 1993. In addition, Summers attached the income tax returns for High Point Furniture for 1993 through 1999. Each of these tax returns treated High Point Furniture as a corporation and indicated that Decedent owned 100% of the stock in the corporation. Summers also attached the personal income tax returns of Decedent, which demonstrated that Decedent did not account for High Point Furniture as a proprietorship. Documentation that was submitted to Key Bank in order to secure a loan also stated that High Point Furniture was a corporation. Finally, in a loan agreement with Firstar Bank, High Point Furniture agreed to "[m]aintain its corporate existence[.]"
 {¶ 22} In her brief, Ms. Kasapis has alleged that High Point Furniture's failure to issue stock mandates a finding that it is a proprietorship. As with her argument above, Ms. Kasapis never raised this argument in the trial court. On appeal, Ms. Kasapis has offered no authority for her position and this Court has found no authority that treats the issuance of stock as dispositive of corporate status. Further, based upon the undisputed evidence above, High Point Furniture held itself out as a corporation. Accordingly, Appellant High Point Furniture is estopped from denying its own corporate status. Callender v.Painesville H.R. Co. (1860), 11 Ohio St. 516, 526.
 {¶ 23} As Ms. Kasapis and High Point Furniture presented no argument in the trial court, the trial court was left with undisputed evidence of the existence of a corporation. Every item of evidence submitted by Summers described High Point Furniture as a corporation and Summers provided its Articles of Incorporation. R.C. 1701.04(E) provides that "[t]he legal existence of the corporation begins upon the filing of the articles * * * and, unless the articles otherwise provide, its period of existence shall be perpetual." Appellants provided no evidence that would contradict the Articles of Corporation and those Articles did not state an ending time for the corporation. Accordingly, viewing the evidence in a light most favorable to Appellants, reasonable minds could only conclude that High Point Furniture was an ongoing corporation. Ms. Kasapis second assignment of error is overruled.
 MS. KASAPIS' ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN PERMITTING SUMMERS TO APPEND NUMEROUS INCOME TAX RETURNS OF THE DECEDENT AND THE SURVIVING SPOUSE, [MS.] KASAPIS, TO HER MOTION [FOR] SUMMARY JUDGMENT IN VIOLATION OF THE INTERNAL REVENUE CODE AND THE OHIO REVISED CODE AND THUS ERRED IN GRANTING SUMMARY JUDGMENT TO HER AND NOT FINDING A VIOLATION OF THE IN TERROREM CLAUSE OF THE WILL."
 {¶ 24} In her final assignment of error, Ms. Kasapis asserts that the trial court erred in permitting Summers to attach tax returns to her motion for summary judgment and erred in finding that she had not violated the in terrorem clause of Decedent's will. This Court disagrees.
 {¶ 25} Subsequent to the filing of Summers' motion for summary judgment, Ms. Kasapis moved to strike the tax returns which were appended to the motion. The trial court denied that motion. Civ.R. 12(F) allows a trial court, upon motion from a party, to strike from any pleading, "an insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter." "Such a decision will not be reversed on appeal absent an abuse of discretion." Akron v. Thrower (Apr. 4, 2001), 9th Dist. No. 20270, at *3. An abuse of discretion is more than a mere error of law or judgment and implies that the court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 26} In support of her claim, Ms. Kasapis relies upon two theories. First, she argues that the publication of the tax returns violates federal law. Next, she asserts that the tax returns are protected by privilege. We find that both assertions lack merit.
 {¶ 27} 26 U.S.C. 7213(a)(3) states that
"[i]t shall be unlawful for any person to whom any return or return information * * * is disclosed in a manner unauthorized by this title thereafter willfully to print or publish in any manner not provided by law any such return or return information."
However, 26 U.S.C. 6103, which makes tax return information confidential, bars the disclosure of tax returns or return information by state and federal officers and employees.26 U.S.C. § 6103(a)(1) and (2). "Nothing in this statute nor the regulations issued thereunder precludes a court of competent jurisdiction from requiring a disclosure of a tax return by the taxpayer in connection with civil litigation to which the taxpayer is a party." Bates v. Midland Title of Ashtabula Cty,Inc., 11th Dist. No. 2003-L-127, 2004-Ohio-6325, at ¶ 43, quoting Connecticut Importing Co. v. Continental DistillingCorp. (1940), 1 F.R.D. 190, 192; see also, McSurely v. McAdams
(D.C. 1980), 502 F.Supp. 52, 56 (section 6103 does not bar "the disclosure of third-party return information to a private party in a non-tax civil case"). Accordingly, the trial court properly ordered disclosure of the tax returns.
 {¶ 28} In addition, Civ.R. 56 provides that documents may be filed in support of summary judgment if they are accompanied by an affidavit which properly authenticates them. Such an affidavit was filed in the instant matter. Accordingly, the returns were published in a manner "provided by law." Summers, therefore, was not in violation of 26 U.S.C. 7213.
 {¶ 29} Ms. Kasapis also asserts that the tax returns are protected by marital privilege. As any privileged communications between Ms. Kasapis and Decedent were communicated to their accountant for the preparation of tax returns, Ms. Kasapis cannot assert that they remain privileged. See R.C. 2317.02(D). Accordingly, we cannot say that the trial court abused its discretion in denying Ms. Kasapis' motion to strike the tax returns from the record.
 {¶ 30} Within her final assignment of error, Ms. Kasapis also asserts that Summers violated the in terrorem clause of Decedent's will. We disagree.
 {¶ 31} The parties agree that Decedent's will contained the following provision:
"If any beneficiary, including my wife, Evangeline Kasapis, hereunder shall contest the probate or validity of this Will or any provision thereof, or shall institute or join in (except as a party defendant) any proceeding to contest the validity of this Will or to prevent any provision thereof from being carried out in accordance with its terms * * * then all benefits provided for such beneficiary are revoked and such benefits shall pass to the residuary beneficiaries of this Will[.]"
This Court, however, has held that an in terrorem clause does
"not have the effect of placing [the executrix'] conduct beyond the reach of the probate court. A probate court continues to retain the power to supervise a fiduciary's actions. See R.C.2101.24(A)(1)(m). This includes the power to review how [the executrix] disposes of the probate assets[.]" Modie v. Andrews,
9th Dist. No. 21029, 2002-Ohio-5765, at ¶ 29.
Summers' motion sought a ruling from the probate court that Ms. Kasapis was required to dispose of the assets of High Point Furniture by placing them in the trust. Accordingly, her conduct cannot be described as challenging the validity of any provision of the will. As such, Ms. Kasapis' third assignment of error is overruled.
 HIGH POINT FURNITURE'S ASSIGNMENT OF ERROR I
"[THE] TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING HIGH POINT FURNITURE CO., INC. TO ISSUE STOCK TO THE SUCCESSOR TRUSTEE."
 {¶ 32} In its first assignment of error, High Point Furniture asserts that the trial court relied upon the incorrect statute in ordering the issuance of stock. This Court finds no reversible error.
 {¶ 33} In its order, the trial court relied upon R.C. 1701.27
when it ordered High Point Furniture to issue stock naming the successor trustee as owner of the corporation. High Point Furniture is correct that R.C. 1701.27 only applies to "lost, stolen, or destroyed" certificates of stock. The trial court's reliance on R.C. 1701.27, therefore, was in error. However, we affirm the trial court's judgment on other grounds. See Joyce v.Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 96 (noting that an appellate court may not reverse merely because the trial court erroneously states the reasons for its judgment).
 {¶ 34} As noted above, the trial court properly determined that High Point Furniture was a corporation and intangible property. Accordingly, pursuant to the terms of Decedent's will, it passed to the trust. R.C. 2101.24(A)(1)(c) provides the probate court with the authority to "order the distribution of estates[.]" Accordingly, the probate court was within its authority to order Ms. Kasapis, as executrix, to distribute High Point Furniture to the trust. As ownership in a corporation is typically evidenced by certificates of stock, we cannot say that the probate court lacked the authority to order stock to issue. Such an order was required to fulfill the probate court's responsibility to order the distribution of the estate. Accordingly, High Point Furniture's first assignment of error is overruled.
 HIGH POINT FURNITURE'S ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED AS A MATTER OF LAW, EVEN IF IT HAD AUTHORITY TO ORDER THE CORPORATION TO ISSUE STOCK BY NOT HAVING A FULL HEARING ON WHO IS ENTITLED TO OWNERSHIP OF THE STOCK."
 {¶ 35} In its final assignment of error, High Point Furniture contends that the trial court erred when it failed to hold a hearing prior to ordering that the corporation be conveyed in its entirety to the trust. This Court disagrees.
 {¶ 36} In support of its final assignment of error, High Point Furniture asserts that "[t]here are other claims of ownership and additional facts that should have been considered[.]" However, as noted above, once Summers met her initial burden, the burden then shifted to High Point Furniture to establish a genuine issue of material fact. High Point Furniture offered no factual rebuttal to Summers' evidence. On appeal, however, High Point Furniture argues that the documentation Summers submitted did not provide an adequate basis for the court's order. We find that such an argument lacks merit.
 {¶ 37} The tax returns submitted by Summers list Decedent as the owner of 100% of the stock of High Point Furniture. While the returns list individuals such as Anthony Kasapis, Athena Daniels, and Steven Daniels as officers of the corporation, no documentation was submitted to the trial court to indicate that any person other than Decedent ever had an ownership interest in the corporation. Accordingly, High Point Furniture failed to meet its reciprocal Dresher burden and the trial court properly granted summary judgment in favor of Summers. Dresher,75 Ohio St.3d at 293. High Point Furniture's second assignment of error is overruled.
 III. {¶ 38} Ms. Kasapis' three assignments of error are overruled. High Point Furniture's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Probate Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas Probate Division, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed equally to Appellant Evangeline Kasapis and Appellant High Point Furniture Co., Inc.
Exceptions.
Whitmore, P.J. Boyle, J. concur.
[1] Under the terms of the trust, Ms. Kasapis would have enjoyment of its assets until her death.